UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Cr. No. H-24-371-10 |
| EUGENE WALKER | |

### MOTION TO DISMISS COUNTS 1 AND 6 FOR FAILURE TO STATE AN OFFENSE

 

Respectfully submitted,

By _/s/ Joshua Lake_
Joshua Lake
Texas Bar No. 24129249
**KHALIL & LAKE**
4200 Montrose Blvd., Suite 440
Houston, Texas 77006
713.904.4477
joshua@klfirm.law

*Attorney for Eugene Walker*

## Table of Contents

I.   **Introduction**: The indictment does not allege a scheme to wrongfully deprive a victim of money or property. ........................................ 3

II.  **Legal Authority**: Motions to Dismiss ...................................................... 5

III. **Argument**: Counts 1 and 6 must be dismissed for failing to allege essential elements of the charged offenses. ........................................ 6

   A.  The indictment does not allege the existence of any victim. ................... 7

   B.  The alleged object of the fraud was not money or property. .................. 7

      1.  The indictment alleges neither actual nor intended harm to money or property. ............................................................................. 8

      2.  Financial harm was not an object of the alleged scheme. .................... 9

      3.  The indictment alleges, at most, a scheme to deprive other parties of economic information, which is not a property interest. ...................... 11

IV.  **Conclusion**: Counts 1 and 6 must each be dismissed for failing to state an offense. ................................................................................. 15

Mr. Walker moves this Court to dismiss Counts 1 and 6 for failing to state an offense. The indictment's allegations no doubt suggest the appearance of fraud, but they fail to allege essential elements of wire fraud and conspiracy to commit wire fraud under 18 U.S.C. §§ 1343, 1349. The charges fall short in at least two ways: (1) they fail to allege a scheme to deprive a victim of its property; and (2) they fail to allege a scheme whose object was property.

## I. Introduction: The indictment does not allege a scheme to wrongfully deprive a victim of money or property.

This indictment falls short because it does not allege any intent to harm anyone's money or property interests. For at least a century, the Supreme Court has recognized that the words "to defraud"—as used in § 1343—require proof of a scheme to harm property rights. *See Hammerschmidt v. United States*, 265 U.S. 182 (1924) ("the words 'to defraud' … usually … refer to wronging one in his property rights by dishonest methods or schemes").

"This is not a new principle, though recent Supreme Court cases have brought it to the forefront." *United States v. Greenlaw*, 84 F.4th 325, 344 (5th Cir. 2023). Through "an extensive line of cases," the Supreme Court and the Fifth Circuit have long differentiated "conduct that is merely deceitful from conduct that wrongs one in his property rights. Only the latter falls within the 'common understanding' of defraud." *Id.* (cleaned up).

So how does that apply to this indictment? We do not dispute that Counts 1 and 6 allege deception, but "deceiving is a necessary condition of defrauding," "not a sufficient one." *Id.* at 351 (quoting with approval *United States v. Takhalov*, 827 F.3d 1307, 1312, 1314 (11th Cir.), *as rev'd* (Oct. 3, 2016)). Wire fraud also requires an intent to cheat, that is "to deprive the victim of money or property." *Id.* (quoting with approval *United States v. Miller*, 953 F.3d 1095, 1103 (9th Cir. 2020)). This indictment lacks that.

By way of analogy, consider a teenager who lies to his parents about wearing a seat belt. Imagine, too, that his parents relied on that promise—they wouldn't have loaned him the car without it. Admittedly, the boy's deception would affect the degree of harm in the event of a car wreck, but it does not mean he intended to wreck the family car. Despite the deception, he never intended to harm himself or the car—harm was not the object of his lie.

So too here. Even if the defendants falsified financial statements, they had no intention of forfeiting the bond, which means no one would ever need to pay the bond amount. Although the deception may have affected the degree of potential harm, financial harm was not its object. In fact, all parties obtained the results they bargained for: the defendants received a bail bond, and they paid the bond company its "premium, which is generally a percentage of the total bail amount set by the … court." Indictment ¶ 1. This indictment fails to allege a scheme whose object was financial harm.

Because Counts 1 and 6 do not allege an intent to wrongfully deprive anyone of money or property, they both fail to state an offense.

## II. Legal Authority: Motions to Dismiss

A criminal defendant may move to dismiss an indictment based on a "defect," including "failure to state an offense." Fed. R. Crim. P. 12(b)(3)(B)(v). "The propriety of granting a motion to dismiss an indictment … by pretrial motion is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. … If a question of law is involved, then consideration of the motion is generally proper." *United States v. Fontenot*, 665 F.3d 640, 644 (5th Cir. 2011) (quoting *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005)). "In reviewing a challenge to an indictment alleging that it fails to state an offense, the court is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *Id.* (quoting *United States v. Crow*, 164 F.3d 229, 234 (5th Cir. 1999)).

When an indictment fails to sufficiently allege every element of a charged crime, the indictment must be dismissed. *United States v. Ratcliff*, 488 F.3d 639, 648 (5th Cir. 2007) (affirming dismissal of mail-fraud indictment that had alleged only deceitful conduct without alleging a scheme to "wrong the victim's property rights").

## III. Argument: Counts 1 and 6 must be dismissed for failing to allege essential elements of the charged offenses.

The Government has charged Mr. Walker (and a host of other defendants) with committing, and conspiring to commit, wire fraud in violation of 18 U.S.C. §§ 1343 & 1349. Section 1343 prohibits devising "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises," and Section 1349 prohibits conspiracies to do the same.

Counts 1 and 6 stem from a Harris County bail bond for Anthony Perkins. *See* Indictment ¶¶ 12–14. That bond was a "contract between [Perkins] and the bail bonds company," AABLE Bonds. *Id.* ¶¶ 3–4. Two AABLE employees are accused of recruiting "straw co-signers," *id.* ¶ 9, who "agree[d] to enter the contract" and "thereby accept[] the financial obligations of paying the full bail bond amount set by the Judge in the event of forfeiture." *Id.* ¶ 3. The indictment alleges that the conspirators' goal was to obtain a bail bond for Perkins, *id.* ¶ 12, and that in furtherance of that object, they falsified the co-signers' financial reports. *Id.* ¶¶ 8–10. Mr. Walker is charged in Counts 1 and 6 with being one of those straw co-signers.

As we have said, those charges fall short in at least two ways: (1) they fail to allege the existence of any victim; and (2) they fail to allege a scheme whose object was property.

6

### A. *The indictment does not allege the existence of any victim.*

To begin, the indictment does not identify any victim of these crimes, and to the extent it may imply a victim, the indictment fails to allege a scheme to wrongfully deprive that entity of money or property.

In Counts 1 and 6, the indictment fails to allege the existence of any victim. Indictment ¶¶ 12–14 ("a scheme and artifice to defraud" whom?). An essential element of wire fraud is the intent to "deprive *another* of money or property." *See United States v. Baker*, 923 F.3d 390, 402–03 (5th Cir. 2019) (approving jury instruction with that language) (emphasis added). The indictment fails to allege an intent to deprive *anyone* of money or property, and it thereby fails to state an offense. For that reason alone, Counts 1 and 6 must be dismissed.

### B. *The alleged object of the fraud was not money or property.*

The Government may argue that the indictment implicitly identifies either AABLE Bonds or Financial Casualty & Surety ("FCS") as the victim of these charges, but even accepting that claim *arguendo*, this indictment would still fall short because it does not allege a scheme to fraudulently deprive either company of any money or property.[1]

---

[1] In any event, the Government cannot credibly argue that the indictment identifies AABLE Bonds as a victim, rather than a conspirator. The company's CEO and two employees are charged as codefendants in this scheme. Indictment ¶¶ 4, 7, 8, 9, 12, 15, 18, 20, 21, 24, 27, 30, 33, 36, 48.

7

The federal fraud statutes "bar only schemes for obtaining property." *Kelly v. United States*, 590 U.S. 391, 404 (2020). Harm to property cannot be merely incidental to the alleged crime. *Kelly*, 590 U.S. at 400. A wire fraud charge, therefore, must contain an allegation that money or property was an object of the fraud. *See Ciminelli v. United States*, 598 U.S. 306, 312 (2023).

Here, there is no allegation that the defendants intended to improperly deprive any victim of any property, and the indictment fails to allege any property interest that was harmed or placed at undue risk of harm.

### 1. *The indictment alleges neither actual nor intended harm to money or property.*

The indictment does not allege that the defendants intended to obtain money or property, or to harm any property interest at all. Compare the language of the indictment to the language of the statute—the emphasized language occurs only in the statute:

| Indictment ¶¶ 12, 14 | 18 U.S.C. § 1343 |
|---|---|
| "devise and intend to devise a scheme and artifice to defraud by means of materially false and fraudulent pretenses, representations, and promises …" | "devised or intending to devise any scheme or artifice to defraud, **or for obtaining money or property** by means of false or fraudulent pretenses, representations, or promises…" |

Although the statutory language uses disjunctive phrasing—"scheme … to defraud, or for obtaining money or property"—the Supreme Court has long held that the two phrases do not describe separate offenses; the latter merely

8

clarifies the former. *McNally v. United States*, 483 U.S. 350, 358–59 (1987) (superseded by statute on other grounds).

Here, the indictment fails to allege a scheme "for obtaining money or property." § 1343. The indictment's omission of that language might not alone be fatal, but it supports our larger argument: this indictment fails to allege any harm to, or intent to harm, anyone's money or property interests. That larger failure dooms this indictment.

### *2. Financial harm was not an object of the alleged scheme.*

The indictment fails because the object of the alleged deception was not financial harm. That omission is fatal.

As we have said, we might compare these allegations to a teenager who falsely promises to wear a seat belt. That deception could affect the degree of harm in the event of a car wreck, but it would not change his chances of having a wreck. Despite the deception, the teen never had any intent to harm himself or the family car. Harm was not the object of his lie.

So too here. The alleged co-signer deception, Indictment ¶¶ 8–10, might have increased the bonding company's costs if the Perkins bond were forfeited, but the indictment does not allege any intent to forfeit it. The indictment does not allege deception about Perkins' intent to "comply with the proceedings and rules of the court," which is the only reason his bail bond would have ever been forfeited. *Id.* ¶ 1; *see also* Tex. Code Crim. Proc. Art. 22.01 ("When a defendant

9

… fails to appear … a forfeiture of his bail … shall be taken."). Because the indictment does not allege any intent to have the Perkins bond forfeited, it alleges no intent to require anyone to ever pay the bond. Indictment ¶ 1 (bail bond: a promise to pay if the defendant does not comply with court rules). The Government has not alleged a scheme to harm any property interest.

To bring our earlier illustration within the scope of federal fraud, imagine the teenager telling a different lie. If he promised to be back by 10 p.m. while secretly intending to take the car and never return, the car would be the object of his deception. In this case, however, the Government does not allege that anyone had an intent to flee, and in fact, no bond was ever forfeited.

Although financial harm could plausibly have occurred, property "must play more than some bit part in a scheme: It must be an object of the fraud." *Kelly*, 590 U.S. at 402 (quotation marks and citation omitted). For that reason, "a property fraud conviction cannot stand when the loss to the victim is only an incidental byproduct of the scheme." *Id.*; *see also Greenlaw*, 84 F.4th at 350 ("Indeed, it has long been [the Fifth Circuit's] understanding that" an intent to defraud element "requires an intent to … cause some harm to result from the deceit.") (internal quotation marks and citation omitted).

In *Kelly*, the Supreme Court invalidated the defendants' wire fraud convictions because property harm was only an "incidental byproduct" of the defendants' scheme. *Kelly*, 590 U.S. at 402. Their goal had been "to impede

10

access from Fort Lee to the George Washington Bridge," and the "cost of the employee hours spent on implementing that plan was its incidental byproduct." *Id.* at 403. That evidence was insufficient to convict because property harm was not an object of the defendants' scheme. *Id.* at 404.

In the same way, this indictment fails to state an offense because it fails to allege a fraud whose object was to harm money or property. *See Greenlaw*, 84 F.4th at 350.

### 3. *The indictment alleges, at most, a scheme to deprive other parties of economic information, which is not a property interest.*

Finally, the indictment also fails because it alleges no more than a scheme to deprive others of economic information, which is not a property interest.[2] Two recent decisions underscore this flaw. Last year in *Ciminelli*, the Supreme Court reiterated that "the wire fraud statute reaches only

---

[2] The Supreme Court is considering a similar issue in *Kousisis v. United States*, No. 23-909, which the Court will hear on December 9, 2024. The petitioner frames the issue this way: "Whether a scheme to induce a transaction in property through deception, but which contemplates no harm to any property interest, constitutes a scheme to defraud under the federal wire fraud statute, 18 U.S.C. § 1343." Pet. Merits Br. at i (Aug. 19, 2024).

In addition, similar reasoning recently led the Honorable Judge Andrew S. Hanen in this district to dismiss a securities-fraud indictment because "the object of the scheme was not deprivation of alleged victims' property rights." *United States v. Constantinescu*, No. 4:22-CR-612, 2024 U.S. Dist. LEXIS 49916 at 18 (S.D. Tex. Mar. 20, 2024). Instead, the alleged deception "deprived them only of accurate information necessary to make discretionary economic decisions." *Id.* at 19. The Government has appealed that decision, and the Fifth Circuit recently stayed further proceedings in anticipation of the forthcoming *Kousisis* decision.

11

traditional property interests," and the "right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest." *Ciminelli*, 598 U.S. at 316. Last year, the Fifth Circuit also held that an "intent to defraud" requires proof of both "an intent to (1) deceive, *and* (2) cause some harm to result from the deceit." *Greenlaw*, 84 F.4th at 344 (emphasis in original) (quotation marks and citation omitted).[3]

Indeed, for decades, the Supreme Court has emphasized that federal fraud statutes are "limited in scope to the protection of property rights." *McNally*, 483 U.S. at 360. "Accordingly," the Government "must prove not only that wire fraud defendants engaged in deception, but also that money or property was an object of their fraud." *Ciminelli*, 598 U.S. at 312 (internal quotation marks and citation omitted).

In many ways, this case mirrors *Ciminelli*. There, the defendants had concocted a scheme to tailor a government bidding process to "smooth the way" for their companies to receive major contracts. *Id.* at 310. At trial, the Government argued that wire fraud could be proven by the defendants' scheme "to deprive a victim of potentially valuable economic information necessary to

---

[3] Following *Greenlaw*, the Fifth Circuit Pattern Jury Instructions were amended to include this note: The wire fraud instruction "requires that the government prove … both an intent to deceive and to cheat, or cause a harm to property interests by such deception." Fifth Circuit, Pattern Jury Instructions (Criminal Cases) § 2.57 (2024).

12

make discretionary economic decisions." *Id.* at 306. In other words, the victim likely would not have selected Ciminelli's company for the contract had it known about his scheme. The jury returned convictions under that theory.

The Supreme Court, however, rejected it. *Id.* at 313–16. "The right to valuable economic information needed to make discretionary economic decisions is not a traditional property interest," so it "cannot form the basis for a conviction under the federal fraud statutes." *Id.* at 316. Federal fraud statutes are "limited in scope to the protection of property rights." *Id.* at 314 (quoting *McNally*, 483 U.S. at 360). "Accordingly, the Government must prove not only that wire fraud defendants 'engaged in deception,' but also that money or property was 'an object of their fraud.'" *Id.* at 312 (quoting *Kelly*, 590 U.S. at 391); *see also Greenlaw*, 84 F.4th at 344 (requiring "an intent to … cause some harm to result from the deceit").[4]

After all, the Supreme Court has "consistently rejected … federal fraud theories that stray from traditional concepts of property." *Ciminelli*, 598 U.S. at 314–15. In *Ciminelli,* the Government conceded that if "the right to make informed decisions about the disposition of one's assets, without more, were

---

[4] *See also United States v. Yates*, 16 F.4th 256, 265 (9th Cir. 2021) (quoting *United States v. Sadler*, 750 F.3d 585, 591 (6th Cir. 2014)) ("The accurate-information theory is legally insufficient. There is no cognizable property interest in 'the ethereal right to accurate information.'").

13

treated as the sort of 'property' giving rise to wire fraud, it would risk expanding the federal fraud statutes beyond property fraud as defined at common law and as Congress would have understood it." *Id.* at 315 (quoting Gov't Brief).[5]

Yet here, the Government's indictment takes that exact approach. As charged, this was at most a scheme to deprive an entity of accurate information, but not a scheme to deprive it of property.

In the past, the Government has defined "the words 'to deprive' as merely meaning 'to take something away from.' However, … the deprivation must involve a wronging of the victim's property rights." *Ratcliff*, 488 F.3d at 645 n.8. Here, it is insufficient for the indictment to allege that the defendants sought to obtain a bail bond without alleging an intent to wrong anyone's property rights. Otherwise, *Ciminelli* was wrongly decided: that defendant sought to obtain payment and deceived the victim, yet he intended to (and did) deliver on his end of the bargain. As in *Ciminelli*, that is not enough here.

---

[5] Indeed, this principle has roots dating back to early common law, when "[f]raud between two private individuals" was "left for civil actions." Ellen S. Pogdor, *Criminal Fraud*, 48 Am. U. L. Rev. 729, 736 (1999). Without property harm, there was no crime. *See State v. Palmer*, 32 P. 29, 30 (Kan. 1893) ("Though money is obtained by misrepresentation, if no injury follows, no crime is accomplished."); *Randall v. Hazelton*, 94 Mass. (12 Allen) 412, 414 (1866) ("[A]n ancient and well established legal principle" of the common law is "that fraud without damage or damage without fraud gives no cause of action.").

14

Because the indictment does not allege a "wronging of the victim's property rights," *id.*, Counts 1 and 6 must be dismissed.

## IV. Conclusion: Counts 1 and 6 must each be dismissed for failing to state an offense.

The Government's theory of prosecution would "vastly expand[] federal jurisdiction without statutory authorization." *Id.* at 315. It would allow the United States to bring wire fraud charges for "an almost limitless variety of deceptive actions traditionally left to state contract and tort law." *Id.* Such an approach would "significantly infringe on bedrock federalism principles," *Snyder v. United States*, 144 S. Ct. 1947, 1956 (2024), by extending federal jurisdiction over an astounding range of private contracts.

Imagine two teenagers who agree to mow a lawn for $40 after sending the homeowner an email promising to put the money toward college tuition. If they instead planned to spend the money on beer, their conduct would fall squarely within the Government's theory here: it was an act of deception, sent by wire, regarding a monetary transaction, so it was federal wire fraud.

That can't be the law. And it isn't. Unless financial harm is an object of the scheme, there is no federal fraud. Just like those wayward teenagers, these defendants planned to, and did, uphold their end of the bargain, "pay[ing] the bail bond company a premium, which [was] generally a percentage of the total

15

bail bond amount." Indictment ¶ 1.[6] The indictment does not allege that they ever intended to "wrong [any]one in his property rights." *Greenlaw*, 84 F.4th at 344.

Because Counts 1 and 6 both fail to allege an offense, they must be dismissed. *See* Fed. R. Crim. P. 12(b)(3)(B)(v); Fed. R. Crim. P. 7(c)(1) (an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged"); *United States v. Suarez*, 966 F.3d 376, 382 (5th Cir. 2020) ("an indictment must state each element of the charged crime and allege that the defendant's conduct met each of those elements").

Respectfully submitted,

By /s/ Joshua Lake

Joshua Lake
Texas Bar No. 24129249
**KHALIL & LAKE**
4200 Montrose Blvd., Suite 440
Houston, Texas 77006
713.904.4477
joshua@klfirm.law

*Attorney for Eugene Walker*

---

[6] Although this motion will be decided on the face of the indictment, we note that according to discovery, the defendants paid AABLE Bonds at least $22,550 in exchange for its posting of the Anthony Perkins bail bond. And neither AABLE nor FCS was ever required to part with any money because the Perkins bond was not forfeited.

## **CERTIFICATE OF SERVICE**

On November 20, 2024, I am filing the foregoing pleading with the Clerk of Court using the CM/ECF system, which will serve a copy on all counsel of record.

                                          */s/ Joshua Lake*
                                          Joshua Lake