UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| VS. | § § | CRIMINAL NO. 24-cr-371 |
| EUGENE WALKER (10) PATRICK BROWN (34) | § § § | |

**THE UNITED STATES' RESPONSE TO DEFENDANTS'
MOTIONS TO DISMISS INDICTMENT**

The United States of America, by the United States Attorney for the Southern District of Texas, Alamdar S. Hamdani, through Assistant United States Attorney Michael E. Day, files this Response to the defendants' Motions to Dismiss the Indictment, and shows the Court as follows:

**Procedural Summary**

On July 16, 2024, the above-captioned defendants were indicted by a grand jury and were each charged with one count of conspiracy to commit wire fraud, under 18 U.S.C. § 1349, and with one count of wire fraud, under 18 U.S.C. § 1343. On November 20, 2024, the defendant Eugene Walker filed a motion to dismiss the indictment, and defendant Patrick Brown filed a motion to join Walker's motion to dismiss on December 6, 2024. In sum, the defendants claim that the Indictment should be dismissed because (1) there is no victim and (2) the object of the fraud is not money or property. This is incorrect. The victim is the Government, who did not receive the full cash bond it would have been entitled to, and the object of the fraud was money, because by qualifying for a surety bond through fraud, the defendants spent less money than they would have with a cash bond. As such the defendants' motions should be denied.

1

**Argument**

In his motion to dismiss, Walker "moves this Court to dismiss Counts 1 and 6 for failing to state an offense." Dkt. No. 696, pg. 3. "An indictment is legally sufficient [and states an offense] if (1) each count contains the essential elements of the offense charged, (2) the elements are described with particularity, and (3) the charge is specific enough to protect the defendant against a subsequent prosecution for the same offense." *United States v. Simpson*, 741 F.3d 539, 547 (5th Cir. 2014) (citation and internal quotation marks omitted), *see also United States v. Selgjekaj*, 678 F. App'x 379, 384 (6th Cir. 2017), *Hamling v. United States,* 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974) (citations omitted). Given the fact that the Indictment here contains the essential elements of the offenses charged and described each element with particularity so as to protect the defendant against a subsequent prosecution for the same offense, the defendants' motion to dismiss should be denied.

The Fifth Circuit Court of Appeals Pattern Jury Instructions reference the elements of wire fraud as follows[1]:

For 18 U.S.C. § 1343, the United States must prove beyond a reasonable doubt that:

*First*: That the defendant knowingly devised or intended to devise any scheme to defraud;

*Second*: That the scheme to defraud employed false material representations [false material pretenses] [false material promises];

*Third*: That the defendant transmitted [caused to be transmitted] by way of wire [radio] [television] communications, in interstate [foreign] commerce, any writing [sign] [signal] [picture] [sound] for the purpose of executing such scheme; and

*Fourth*: That the defendant acted with a specific intent to defraud.

---

[1] Fifth Circuit Court of Appeals Pattern Jury Instruction 2.57; *see also United States v. Harris*, 821 F.3d 589, 598 (5th Cir. 2016)

The elements of conspiracy to commit wire fraud are: "(1) two or more persons made an agreement to commit wire fraud; (2) the defendant knew the unlawful purpose of the agreement; and (3) the defendant joined in the agreement with the intent to further the unlawful purpose." 18 U.S.C. §§ 1343, 1349; *see also United States v. Sanders*, 952 F.3d 263, 273 (5th Cir. 2020).

All elements for the charges are addressed in the language in the indictment. First, the indictment alleged and described a scheme to defraud. As stated in the indictment, the process of assessing risk for a bail bond required documentation of collateral, including the yearly income of third parties referred to as co-signers. *See* Indictment, Dkt. No. 1, para. 3. The defendants falsified and obtained the co-signer financial reports to qualify individuals charged with criminal offenses who would not otherwise qualify for the coverage necessary to meet the terms of their bond. Dkt. No. 1, paras. 8 and 12. The indictment also alleged and explained that wire communications were used in furtherance of the scheme as the falsified co-signer financial reports were subsequently emailed or submitted via electronic communication to Bond-Pro, Inc., an electronic communications/remote computing service provider located in Georgia, and the government. Dkt. No. 1, paras. 6 and 10. Finally, the indictment alleged a specific intent to defraud. The defendants represented they worked at companies or earned incomes in the falsified co-signer financial reports when in fact they did not work at the companies or earn the represented incomes. Dkt. No. 1, para. 9.

In his motion, Walker cited *Ciminelli v. United States*, 598 U.S. 306 (2023), and argues that "this was at most a scheme to deprive an entity of accurate information, but not a scheme to deprive it of property." Dkt. No. 696, pg. 14. However, *Ciminelli* addressed "economic

information needed to make discretionary economic decisions." The present case is distinguishable: it does not involve economic information but instead involves bail bonds where the Government would have been entitled to the full amount of the bond but for the defendants' scheme to defraud the underwriter and induce a contract between the underwriter and Government based on fraudulent representations. Again, if the defendants had not devised the scheme to defraud, then the Government would not have entered into the contract with the underwriter and would have been entitled to the full amount of the bond. Moreover, the defendants did financially benefit because instead of paying a full cash bond, they opted to use a bail bond company and paid only a percentage of the total bail bond amount set by the Judge of the court.

Walker also argues that the indictment "falls short because it does not allege any intent to harm anyone's money or property interests." Dkt. No. 696, p. 3. However, the Government is not required to proves that an intended victim was actually defrauded to establish a violation of 18 U.S.C. § 1343. *Durland v. United States,* 161 U.S. 306, 315, 16 S.Ct. 508, 512, 40 L.Ed. 709 (1896); *United States v. Andreadis,* 366 F.2d 423, 431 (2d Cir.1966); *United States v. Starr*, 816 F.2d 94 (2d Cir. 1987). "No actual pecuniary injury, therefore, need result to the victim of the fraud. Although the government is not required to prove actual injury, it must, at a minimum, prove that defendants *contemplated* some actual harm or injury to their victims. Only a showing of intended harm will satisfy the element of fraudulent intent." *See also United States v. Dinome,* 86 F.3d 277, 283–85 (2nd Cir. 1996) (upholding wire fraud convictions based on supplying false information in connection with mortgage loan; even though lender suffered no loss, loan would not have been made if accurate information had been supplied).

But the indictment in the present case provides more. It explains that, as a result of the defendants' fraudulent scheme, the Government entered into a surety bond it would not have otherwise entered into. Dkt. No. 1, para. 11. By entering into that surety bond, the Government was deprived of property – the full bond amount – that it would have otherwise been entitled to, even if only temporarily. *See* Dkt. No. 1, para. 1 (explaining how a bail bond works). Additionally, the defendants did financially benefit because instead of paying a full cash bond, they opted to use a bail bond company and paid only a percentage of the total bail bond amount set by the Judge of the court. *Id*.

The Fifth Circuit has repeatedly recognized that misrepresentations need not be made directly to the victim, and that wire fraud is demonstrated when "victims [a]re left without money that they otherwise would have possessed." *United States v. McMillan*, 600 F.3d 434, 449 (5th Cir. 2010). Here, the indictment alleges that the misrepresentations were made by the bail bond company to both the Government and the underwriter, Financial Casualty & Surety. Dkt. No. 1, para. 6. The victim, the Government, relied on the misrepresentations and the underwriter's guarantee to enter into a surety bond that would not have otherwise been authorized, and thus the government, as the victim, was "left without money that [it] otherwise would have possessed."

As stated above, the wire fraud statute does not require an intent to obtain property directly from a victim. It is sufficient for a conviction if the defendant intended to deceive the victims out of their money for his or her own financial benefit. *See United States v. Baker*, 923 F.3d 390, 405 (5th Cir. 2019). In *McMillan*, the defendants caused to be filed false financial reports listing speculative or nonexistent receivables as assets. *Id*. at 441. They also recorded as assets

5

receivables "which were supposed to be capital infusions from the parent company but which the parent company in reality did not have the ability to provide and which never materialized." *Id*. at 442. *Id*. These purported assets were included in financial statements, and without these invalid assets reported on its statements, the defendants would not have met the minimum statutory net worth requirements. *Id*. As part of the scheme, the defendants also obtained a personal loan from a bank and reported the transaction in annual financial report as a capital infusion from the parent in order to raise net worth. *Id*. "Had the transfer of funds to the company been reported correctly there would have been no effect on the company's net worth because there would have been an increase in cash assets along with a corresponding increase in liabilities." *Id*.

The defendants in *McMillan* contended that the alleged scheme to deceive the insurance department in order to obtain money from the third-party victims was contrary to Supreme Court and Fifth Circuit precedent, which they contended required that the scheme be to defraud the actual victim and that the object of the scheme be money or property in the hands of that deceived victim. *Id*. at 447. The defendants relied for support of their argument on the Supreme Court's decision in *Cleveland* and in *Ratcliff* (also cited by Walker in his motion, Dkt. No. 696, pg. 5). *Id*. The Court held that the Government was not required to prove that misrepresentations were made directly to any of the victims. *Id*. at 450. It was also not required to prove that any victim actually suffered a loss, *see United States v. Loney,* 959 F.2d 1332, 1337 (5th Cir.1992) (holding that Government need not prove victim of fraud was actually harmed by showing a financial loss). *Id*. The Government was required to prove only a scheme to defraud, the use of the mail or wire communications, and a specific intent to defraud. *Id*. The defendants' sufficiency-of-the-evidence

6

argument focused only on the target of the alleged misrepresentation, an argument which the Court concluded was unavailing. *Id*.

Just as the Court stated in *McMillan*, the Government is not required to prove the victim of fraud was actually harmed by showing a financial loss and is required to prove only a scheme to defraud, the use of the mail or wire communications, and a specific intent to defraud. To prove a scheme to defraud, the Government must show fraudulent activity and that the defendant had a conscious, knowing intent to defraud. *United States v. Stephens*, 571 F.3d 401, 404 (5th Cir. 2009). The indictment in the present case alleges both. The defendants falsified and obtained falsified co-signer financial reports to qualify individuals, charged with criminal offenses, who would not otherwise qualify for the coverage necessary to meet the terms of their bond, showing the fraudulent activity. Dkt. No. 1, para. 8. The defendants represented they worked at companies or earned incomes in the falsified co-signer financial reports when in fact they did not work at the companies or earn the represented incomes, further showing the conscious, knowing intent to defraud. Dkt. No. 1, para. 9.

## Conclusion

For these reasons, the defendants' Motions to Dismiss the Indictment should be denied.

                Respectfully submitted,

                ALAMDAR S. HAMDANI
                United States Attorney,
                Southern District of Texas

By: */s/ Michael E. Day*
     Michael E. Day
     Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 30th day of December, 2024, I electronically filed this document with the Clerk of Court using CM/ECF, and notice was sent via e-mail to counsel for the Defendants.

*/s/ Michael E. Day*
Michael E. Day
Assistant United States Attorney